## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SPECIAL HAPPY, LTD

      Plaintiff,

      vs.

JASON LOOMIS and FOOT-CANDLE, LLC.

      Defendant.

FOOT-CANDLE, LLC and SEASONS 4 INC.

      Counterclaim-Plaintiffs,

      vs.

SPECIAL HAPPY, LTD.

      Counterclaim-Defendant.

Case No.: 1:24-cv-03049-MLB

**JURY TRIAL DEMANDED**

**ANSWER AND FIRST AMENDED COUNTERCLAIM**

1

Defendants Foot-Candle, LLC ("Foot-Candle") and Jason Loomis ("Loomis" and collectively with Foot-Candle, "Defendants") hereby answer Special Happy, Ltd.'s ("SHL") Complaint as follows:

## INTRODUCTION[1]

1.      Denied.

2.      Defendants admit that Foot-Candle does not directly manufacture products.

3.      Defendants admit that Foot-Candle does not directly sell products.

4.      Denied.

5.      Denied.

## SUBJECT MATTER JURISDICTION

6.      Defendants admit that SHL purports to incorporate by reference all preceding paragraphs as if expressly set forth in its pleading.

7.      Denied.

8.      Defendants state that Paragraph 8 calls for legal conclusions concerning subject matter jurisdiction to which no response is required.

---

[1] Defendants adopt SHL's headings for convenience only, which should not be adopted as an admission of any type.

## **PERSONAL JURISDICTION**

9.      Defendants admit that SHL purports to incorporate by reference all preceding paragraphs as if expressly set forth in its pleading.

10.     Admitted.

11.     Admitted.

12.     Defendants state that Paragraph 12 calls for legal conclusions concerning personal jurisdiction to which no response is required.

13.     Admitted.

14.     Admitted.

15.     Admitted.

16.     Admitted.

17.     Denied.

18.     Denied.

19.     Defendants state that Paragraph 19 calls for legal conclusions concerning personal jurisdiction to which no response is required.

## **VENUE**

20.     Defendants admit that SHL purports to incorporate by reference all preceding paragraphs as if expressly set forth in its pleading.

21.     Admitted.

22.    Defendants state that Paragraph 22 calls for legal conclusions concerning venue to which no response is required.

23.    Denied.

24.    Defendants state that Paragraph 24 calls for legal conclusions concerning venue to which no response is required.

## **FACTS**

25.    Defendants admit that SHL purports to incorporate by reference all preceding paragraphs as if expressly set forth in its pleading.

26.    Denied.

27.    Admitted.

28.    Admitted.

29.    Denied.

30.    Denied.

31.    Admitted.

32.    Admitted.

33.    Denied.

34.    Admitted.

35.    Admitted.

36.    Admitted.

37.    Denied.  By way of further response, Defendants state that the alleged "Demand Letter" was a good faith email sent as part of a meet and confer process expressly required by the Central District of California's Local Rule 7-3.  The email expressly referred to the California Case in which certain patents were asserted against specific products offered for sale and/or sold by SHL within the United States.  *See* Ex. B (email correspondence).

38.    Denied.

39.    Denied.

40.    Denied.

41.    Denied.

42.    Denied.

43.    Denied.

44.    Denied.

45.    Denied.

46.    Denied.

47.    Denied.

48.    Denied.

49.    Denied.  By way of further response, Defendants state that FCL executed an assignment that transferred the patents that were the subject of the

California Case as part of an agreement reached with SHL to moot SHL's standing argument.  *See* Ex. A (email correspondence).

50.    Denied.

51.    Denied.

52.    Denied.

## COUNT I

53.    Defendants admit that SHL purports to incorporate by reference all preceding paragraphs as if expressly set forth in its pleading.

54.    Defendants admit that SHL accurately quotes the statute and otherwise denies any remaining allegations set forth in Paragraph 54.

55.    Defendants admit that SHL accurately quotes the statute and otherwise denies any remaining allegations set forth in Paragraph 55.

56.    Defendants admit that SHL accurately quotes the statute and otherwise denies any remaining allegations set forth in Paragraph 56.

57.    Admitted.

58.    Admitted.

59.    Denied.

60.    Denied.

61.    Denied.

62.    Denied.

63.    Denied.

64.    Denied.

65.    Denied.

66.    Denied.

67.    Denied,

68.    Denied.

69.    Denied.

70.    Denied.

## COUNT II

71.    Defendants admit that SHL purports to incorporate by reference all preceding paragraphs as if expressly set forth in its pleading.

72.    Denied.

73.    Defendants admit that Foot-Candle does not directly manufacture products.

74.    Defendants admit that Foot-Candle does not directly sell products.

75.    Denied.

76.    Denied.

77.    Denied.

78.    Denied.

79.    Admitted.

80.    Admitted.  By way of further response, Defendants state that Foot-Candle executed an assignment that transferred the patents that were the subject of the California case as part of an agreement reached with SHL to moot SHL's standing argument.  *See* Ex. A (email correspondence).

81.    Denied.

82.    Denied.

83.    Denied.

84.    Denied.

85.    Denied.

86.    Defendants admit that Loomis should not be permitted to use Foot-Candle as a mere alter ego or business conduit to engage in patent trolling, but expressly deny that either Mr. Loomis or Foot-Candle were involved in any such thing.

87.    Denied.

## COUNT III

88.    Defendants admit that SHL purports to incorporate by reference all preceding paragraphs as if expressly set forth in its pleading.

89.    Denied.  By way of further response, Loomis and Foot-Candle understood that the transfer of assets from Foot-Candle back to Seasons 4 Inc. was solely for purposes of mooting SHL's standing argument in the California Case

pursuant to a proposal suggested by SHL as the only way to resolve the standing dispute without motion practice.

90.     Denied.

91.     Denied.

92.     Denied.  By way of further response, Loomis and Foot-Candle understood that the transfer of assets from Foot-Candle back to Seasons 4 Inc. was solely for purposes of mooting SHL's standing argument in the California Case pursuant to a proposal suggested by SHL as the only way to resolve the standing dispute without motion practice.

93.     SHL's reference to "reasonably equivalent" is vague and ambiguous and prevents Defendants from responding to the allegation as drafted.

94.     Denied.

95.     Denied.

96.     Denied.

97.     Denied.

98.     Denied.

99.     SHL's reference to "reasonably equivalent" is vague and ambiguous and prevents Defendants from responding to the allegation as drafted.

100.   Denied.

101.   SHL's reference to "the transfer" is vague and ambiguous and prevents Defendants from responding to the allegation as drafted.

102.   Denied.

103.   Denied.

104.   Denied.

105.   Denied.

106.   Denied.

107.   Denied.

108.   Denied.

## COUNT IV

109.   Defendants admit that SHL purports to incorporate by reference all preceding paragraphs as if expressly set forth in its pleading.

110.   Denied.

111.   Denied.

112.   Denied.

113.   Denied.

114.   Denied.

## COUNT V

115.   Defendants admit that SHL purports to incorporate by reference all preceding paragraphs as if expressly set forth in its pleading.

116.   Denied.

117.   Denied.

118.   Defendants admit that SHL purports to specifically plead for its fees under O.G.C.A. § 13-6-11.

119.   Denied.

## COUNT VI

120.   Defendants admit that SHL purports to incorporate by reference all preceding paragraphs as if expressly set forth in its pleading.

121.   Denied.

122.   Denied.

123.   Denied.

124.   Denied.

125.   Denied

## RESPONSE TO SHL'S PRAYER FOR RELIEF

Defendants deny any allegations not otherwise responded to above and deny that SHL is entitled to the relief sought in its Prayer for Relief, or any other relief.

## AFFIRMATIVE DEFENSES

Defendants hereby assert the following defenses without undertaking or otherwise shifting any applicable burdens of proof.  Defendants reserve the right to

assert additional defenses warranted by facts revealed through investigation and discovery.

## FIRST DEFENSE

SHL has failed to state any claim on which relief can be granted.

## SECOND DEFENSE

SHL's claims are barred in whole or in part under principles of equity, including without limitation, waiver, acquiescence and/or unclean hands.

## THIRD DEFENSE

SHL's claims are barred based on fraudulent inducement.

## FOURTH DEFENSE

SHL's claims are barred in whole or in part because they are preempted by federal law, including by laws arising under Acts of Congress relating to Patents.

## FIFTH DEFENSE

Any damages or injuries SHL may have suffered have been caused, in whole or in part, by factors or persons unrelated to Defendants, including SHL itself, and SHL has failed to mitigate any damages it claims to have sustained.

## SIXTH DEFENSE

This action and any relief sought by SHL may be barred in whole or in part by additional defenses that cannot now be articulated because of the generality of aspects of SHL's pleadings and the fact that discovery has not yet been taken.

Accordingly, Defendants reserve the right to assert additional affirmative defenses at such time and to such extent as warranted by discovery and the factual developments in this case.

## FIRST AMENDED COUNTERCLAIMS

1. Counterclaim-Plaintiffs Foot-Candle and Seasons 4 Inc. ("S4I" and collectively with Foot-Candle "Counterclaim-Plaintiffs") file this Counterclaim alleging patent infringement and demand for jury trial against Counterclaim-Defendant SHL and allege as follows.

## NATURE OF THE ACTION

2. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*., including 35 U.S.C. § 271, which gives rise to the remedies specified under 35 U.S.C. §§ 281 and 283-285.

## THE PARTIES

3. Foot-Candle is an LLC organized under the laws of the State of Virginia. Foot-Candle practices the patent-in-suit through its exclusive licensee S4I.

4. S4I is a corporation organized under the laws of Delaware with its principal place of business at 3601 La Grange Parkway, Suite 500, Toano, Virginia.

5. Upon information and belief, Counterclaim-Defendant SHL is a corporation organized under the laws of China, with its principal place of business at Unit 9, 16/F, High Block, Cheung Fung Industrial Building, 23-39 Pat Tin Par Street, Tsuen Wan, New Territories, Hong Kong, China.

6. SHL manufactures artificial Christmas trees including LED lights as well as LED light strings that are separate from Christmas trees.

7.    SHL sells artificial Christmas trees including LED lights, as well as LED light strings that are separate from Christmas trees, throughout the world, including within the United States.

8.    SHL operates in conjunction with an entity called Weatherlit, which like SHL is controlled by Sam Tsai.  For example, SHL has promoted its LED lights through the marketing document reproduced below, which includes Mr. Tsai's business card.



Ex. 2.

9.    The QR code in the bottom right corner links to a Youtube video posted by Sam Tsai (https://www.youtube.com/watch?v=fvQJhYtuuaQ), which itself links to Weatherlit.com as shown in the screenshot below.





*See* Ex. 3.

10.    Upon information belief, SHL, Mr. Tsai, and Weatherlit work together to manufacture and sell Christmas trees including LED lights within the United States.

11.    Upon information and belief, SHL, Mr. Tsai, and Weatherlit work together to sell LED lights separate from artificial Christmas trees within the United States.

12.    As another example, SHL's marketing document, which appears to have been distributed by Mr. Tsai, includes the image below.



Ex. 2.

13.    The above image is substantially the same as the below screenshot captured from https://www.weatherlit.com/.



*See* Ex. 4.

## **THE PATENT-IN-SUIT**

14.     Foot-Candle owns all right, title, and interest in U.S. Patent No. 11,946,634 (the "'634 patent").  A copy of the '634 patent is included herewith as Exhibit 1.  Foot-Candle's Vice President, Jason Loomis, is a named inventor on the '634 patent.

15.     Foot-Candle practices the '634 patent through its exclusive licensee, S4I.  Founded in 2009 and based in Toano, Virginia, S4I is a commercial-grade lighting wholesaler that designs, manufactures, and distributes innovative decorative lighting solutions.  S4I has established itself as an industry leader through research and development efforts directed to producing high quality interior and exterior lighting solutions for large scale effects installed by professionals.  S4I holds dozens of patents protecting these innovation efforts.  For example, S4I's patent protection

for its next generation water-resistant outdoor decorative light strings, the NxG and Everlastrings series, includes the '634 patent.

16.    The '634 patent, titled "Water-Resistant Wired Electro-Magnetic Component Capture," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on April 2, 2024.  Foot-Candle is the sole owner of the '634 patent, with all substantial rights, including the exclusive right to enforce, sue, and recover damages for past and future infringements as evidenced by the assignment included herewith as Ex. 8.

## JURISDICTION AND VENUE

17.    This Court's jurisdiction over this action is proper under relevant statutes, including 35 U.S.C. § 271, *et seq*., 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338 (jurisdiction over patent actions).  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

18.    This Court has general personal jurisdiction over Counterclaim-Defendant at least because Counterclaim-Defendant SHL initiated this lawsuit in the State of Georgia.

19.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c)(3) because Counterclaim-Defendant is not a resident in the United States

and may be sued in any judicial district, including in this lawsuit Counterclaim-Defendant initiated.

### SHL'S KNOWLEDGE OF S4I AND INFRINGING ACTIVITIES

20.    SHL, Weatherlit, and Mr. Tsai are no strangers to S4I.  Specifically, in or around 2021, Mr. Tsai communicated with the factory in China where S4I has its commercial products manufactured.  Thereafter, Mr. Tsai obtained samples of S4I products that practice certain of Foot-Candle's patents to which S4I has an exclusive license.  Mr. Tsai obtained the samples under the guise of being interested in the commercial products to either sell directly or place them on artificial trees.

21.    In or around the fall of 2022, Mr. Tsai approached one of S4I's customers in Wisconsin to provide samples of an LED light string.  When he did so, Mr. Tsai left a marketing document with the customer, which offered for sale an LED light string.

22.    Upon information and belief, the samples of an LED light string fall within the scope of one or more claims of the '634 patent.

23.    Upon information and belief, the LED light string offered for sale in the marketing document is substantially similar in structure and operation compared to the sample that Mr. Tsai left with S4I's customer.

24.    Upon information and belief, SHL works with Weatherlit and Mr. Tsai to jointly import, offer for sale, and sell LED light strings into and within the United

States, either as part of an artificial Christmas tree or as a standalone item, which infringe upon at least claim 16 of the '634 patent.

25.    For example, Direct Export, a company with a presence in Dallas, Texas, promotes Weatherlit/SHL's products in connection with its sale of Christmas trees on its website as shown in the screenshot below (https://www.directexp.com/designers-excellence-christmas-trees/) (last visited on July 8, 2024).





*See* Ex. 5.

26.    The image of the LEDs included on Direct Export's website is substantially the same as the image of LED bulbs included on Special Happy's marketing materials as shown below.



Ex. 2.

27.    As        another        example,        www.bulbcenter.com

(https://bulbcenter.com/products/vickerman-70-led-warm-white-weatherlit-light-set-green-wire-23-long-light-strand-2-pack) sells Weatherlit LED light strings within the United States as shown in the screenshot below.



*See* Ex. 6.

28.    The bulbs shown in the image above appear to be substantially similar to the bulbs shown in the screenshot below on Weatherlit's website (https://www.weatherlit.com/services/), which includes images of the same bulbs as were offered for sale by SHL to S4I's customer within the United States.



*See* Ex. 7.

29.    The products accused of infringement in this case include any waterproof LED light string made, used, sold, offered for sale and/or imported within or into the United States by SHL/Weatherlit/Mr. Tsai regardless of whether such a light string is sold as a standalone unit or as part of another structure such as

Christmas tree or wreath that is substantially similar in structure to the product marketed by SHL as a "50L Light Set, 12" Lead Cord, 6" Light Spacing x 4" End to End" having "Large Peripheral Visibility," "Filled & Sealed by Epoxy," with "3 Housing Layers to Secure the Lead" and "Stretchable Room for Cords" (the "Accused Products").

30.    Upon information and belief, Weatherlit and SHL share common ownership and/or management and/or employees.

31.    Upon information and belief, Weatherlit is an alter ego of SHL and vice versa.

32.    For example, in its Complaint in this action, SHL alleges that "SHL also aggressively protects its intellectual property by obtaining patents on SHL's innovative designs (e.g., U.S. Patent Nos. US10,937,354, US11,317,749, and US11,400,700)."  Dkt. 1-1, ¶33.  U.S. Patent No. 11,400,700 appears to be owned by Mr. Tsai.  At the same time, when referring to U.S. Patent No. 11,499,700, Weatherlit's website states: "Our Proprietary Technology is Patented" as shown in the screenshot below.



33.    Upon information and belief, Weatherlit and SHL are under the common control of Sam Tsai.

34.    Upon information and belief, the sample Mr. Tsai provided to S4I's customer, photographs of which are included herein, is representative of the Accused Products.

## COUNT ONE
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 11,946,634

35.    Counterclaim-Plaintiffs incorporate all preceding allegations as if set forth in full here.

36.    Upon information and belief, SHL has infringed one or more claims of the '634 patent, including at least claim 16, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing the Accused Products.

37.    Claim 16 of the '634 patent recites:

16. A lighting apparatus comprising:

an LED module coupled to at least two insulated conductors;

a light enclosure comprising a base module protruded into and coupled to a cap module such that an internal cavity is formed between the cap module and the base module, and two lumens extending longitudinally into the light enclosure, wherein the light enclosure is configured to receive the LED module therein, the cap module providing an optical path from the received LED module to an outside of the light enclosure, and the base module separates the at least two insulated conductors within the internal cavity of the light enclosure; and,

a sealant disposed within the internal cavity in a fluid form such that at least one continuous water-resistant seal is formed surrounding at least a portion of the base module, the LED module, and the at least two insulated conductors, wherein the sealant surrounds electrical connections of the at least two insulated conductors to the LED module.

38.    Upon information and belief, the Accused Products are lighting apparatuses as shown in the image below.



*See* Ex. 3.

39.    Upon information and belief, the Accused Products include an LED module coupled to at least two insulated conductors as shown in the image below.



40.    Upon information and belief, the Accused Products include a light enclosure comprising a base module protruded into and coupled to a cap module such that an internal cavity is formed between the cap module and the base module, and two lumens extending longitudinally into the light enclosure.



41.    Upon information and belief, in the Accused Products, the light enclosure is configured to receive the LED module therein, the cap module providing an optical path from the received LED module to an outside of the light enclosure.



42.    Upon information and belief, in the Accused Products, the base module separates the at least two insulated conductors within the internal cavity of the light enclosure as shown in the image below.



43.    Upon information and belief, in the Accused Products, a sealant disposed within the internal cavity in a fluid form (e.g., put in place within the internal cavity in liquid form) such that at least one continuous water-resistant seal is formed surrounding at least a portion of the base module.  More specifically, during manufacturing, a sealant is disposed within the internal cavity in fluid form as shown in the image below and as shown at the following link from 1:01-1:22: https://www.youtube.com/watch?v=LrBkijbeAak.



44.    Upon information and belief, in the Accused Products, after liquid sealant is injected into the cap module, the cap module is joined with the base module with the sealant curing and forming a continuous water-resistant seal surrounding at least a portion of the base module, the LED module, and the at least two insulated conductors.



45.    Upon information and belief, in the Accused Products, the sealant surrounds electrical connections of the at least two insulated conductors to the LED module as shown in the image below.  SHL's marketing document confirms that the Accused Products are "Filled & Sealed by Epoxy."



46.    The full extent of SHL's infringement is not presently known to Counterclaim-Plaintiffs.    Counterclaim-Plaintiffs make this preliminary identification of infringing products and infringed claims in Count One without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.

47.    Counterclaim-Plaintiffs have suffered damages, including specifically lost profits (at least by S4I) for any sales that have occurred since the issuance of the '634 patent and going forward, as a result of Defendant's infringement of the '634 patent in an amount to be determined at trial, which will at a minimum represent a reasonable royalty.

48.     Counterclaim-Defendant's infringement of the '634 patent is causing irreparable harm for which Counterclaim-Plaintiffs have no adequate remedy at law unless Counterclaim-Defendant is enjoined by this Court.  Under 35 U.S.C. § 283, Counterclaim-Plaintiffs are entitled to a permanent injunction against further infringement of the '634 patent.

## COUNT TWO

## INDIRECT INFRINGEMENT OF U.S. PATENT NO. 11,946,634

49.     Counterclaim-Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

50.     Counterclaim-Defendant has had knowledge of the '634 patent since at least the time it was served with the Counterclaim in this lawsuit.

51.     In addition to directly infringing the '634 patent, as discussed above with respect to Count One, Counterclaim-Defendant knew or was willfully blind to the fact that it was inducing infringement of the '634 patent under 35 U.S.C. § 271(b) by instructing, encouraging, directing, and requiring third parties, including its customers, to indirectly infringe by selling, offering for sale and using the Accused Products in the United States.

52.     Counterclaim-Defendant knowingly and actively aided and abetted, encouraged, and contributed to the indirect infringement of the '634 patent by instructing and encouraging its customers, purchasers, users, vendors, partners, and

manufacturers to meet the elements of the '634 patent with the Accused Products, as described above.  Such instructions and encouragement include, but are not limited to, advising third parties to sell and offer to sell the Accused Products and to use the Accused Products in an infringing manner by advertising and promoting the use of the Accused Products in an infringing manner.

53.    The full extent of Counterclaim-Defendant's indirect infringement is not presently known to Counterclaim-Plaintiffs.  Counterclaim-Plaintiffs make this preliminary identification of infringing products and infringed claims in Count Two without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.

54.    Counterclaim-Plaintiffs have suffered damages, including specifically lost profits (at least by S4I) for any sales that have occurred since the issuance of the '634 patent and going forward, as a result of Counterclaim-Defendant's indirect infringement of the '634 patent in an amount to be determined at trial, which will at a minimum represent a reasonable royalty.

55.    Counterclaim-Defendant's indirect infringement of the '634 patent is causing irreparable harm for which Counterclaim-Plaintiffs have no adequate remedy at law unless Counterclaim-Defendant is enjoined by this Court.  Under 35 U.S.C. § 283, Counterclaim-Plaintiffs are entitled to a permanent injunction against

further infringement of the '634 patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaim-Plaintiffs pray for the following judgments and relief:

(a) A judgment that Counterclaim-Defendant has directly and/or indirectly infringed and is infringing the '634 patent;

(b) A permanent injunction against Counterclaim-Defendant and its affiliates, subsidiaries, assigns, employees, agents or anyone acting in privity or concert from directly and/or indirectly infringing the patent-in-suit, including enjoining the making, offering to sell, selling, using, or importing into the United States products claimed in any of the claims of the '634 patent; using or performing methods claimed in any of the claims of the '634 patent; inducing others to use and perform methods that infringe any claim of the '634 patent; or contributing to others using and performing methods that infringe any claim of the '634 patent; until the expiration of the '634 patent;

(c) An award of damages adequate to compensate Counterclaim-Plaintiffs for Counterclaim-Defendant's direct and/or indirect patent infringement, and an accounting to adequately compensate Counterclaim-Plaintiffs for the infringement, including, but not limited to, lost profits (at least by S4I) and/or a reasonable royalty;

(d) An award of pre-judgment and post-judgment interest at the maximum rate

allowed by law;

(e) An order finding that this is an exceptional case and awarding Counterclaim-Plaintiffs their costs, expenses, disbursements, and reasonable attorneys' fees related to Counterclaim-Defendant's direct and/or indirect patent infringement under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law; and

(f) Such other further relief, in law or equity, as this Court deems just and proper.

## JURY TRIAL

Counterclaim-Plaintiffs hereby demand a jury trial on all issues triable before a jury.

Respectfully submitted this 7th day of August 2024.

> */s/Olivia E. Marbutt*
> Olivia E. Marbutt
> (Ga. Bar No. 141255)
> Phone:  (404) 855-3865
> Fax: (404) 538-1715
> oliviamarbutt@kentrisley.com
> KENT & RISLEY LLC
> 5755 N. Point Parkway, Suite 57
> Alpharetta, GA  30022
>
> Attorneys for Defendants and
> Counterclaim-Plaintiffs

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

Counsel for the parties hereby certifies that the text of this pleading has been prepared with Times New Roman 14 point, one of the fonts and point selection approved by the Court in Local Rule 5.1B.

<u>/s/Olivia E. Marbutt</u>

Olivia E. Marbutt
(Ga. Bar No. 141255)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on August 7, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document through the Court's CM/ECF system.

*<u>/s/Olivia E. Marbutt</u>*

Olivia E. Marbutt
(Ga. Bar No. 141255)