**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **SPECIAL HAPPY, LTD.**, Plaintiff,<br><br>v.<br><br>**JASON LOOMIS**, et al., Defendants. | Civil Action Number 1:24-cv-03049-MLB<br><br>**PLAINTIFF'S RENEWED MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(h)(3) AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION** |

**PLAINTIFF'S RENEWED MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(h)(3) AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION**

COMES NOW Sam Han, and on behalf of Plaintiff, Special Happy, Ltd. ("SHL"), hereby files Plaintiff's Renewed Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and 12(h)(3) ("Motion") and Memorandum in Support of Plaintiff's Motion ("Memorandum"), showing this Court as follows:

I.      **INTRODUCTION**

On 2025-Mar-11, the Court invited SHL to renew its Article III motion if SHL were to "uncover evidence Foot-Candle divested itself of the right to sue for infringement and any other exclusionary right." SHL uncovered that evidence via the deposition of Foot Candle, LLC ("FCL") and Seasons 4, Inc. ("S4I") under Fed. R. Civ. P. 30(b)(6). That deposition clearly established that S4I retained the following exclusive rights (even to the exclusion of FCL): **(a)** the rights to practice the patents; **(b)** the right to sue for infringement; **(c)** the right to recover damages for infringement; and **(d)** the right to license the patents.

Ultimately, FCL held nothing but bare title.

1

Because FCL never held anything more than bare title, FCL never suffered any injury-in-fact and thus lacked (and still lacks) standing under Article III.

FCL's lack of Article III standing at the time of the removal to federal court requires **DISMISSAL** of Defendants' counterclaims and **REMAND** of all state-law claims to the Superior Court of DeKalb County.

## II.    PROCEDURAL HISTORY

On 2025-Mar-21, the Court entered an Order based on the following representations made by Defendants: **(a)** "the assignment from Seasons 4 to Foot-Candle transferred to Foot-Candle exclusionary rights, including the 'right to sue for infringement' sufficient for its lost profits claim" [Order, Doc. 142 at 9]; and **(b)** "Foot-Candle did not convey back to Seasons 4 all the rights received and, importantly, retained the right to sue for enforcement of the '634 patent" [*id*. at 10].

Based on Defendants' representations that "Foot-Candle did not convey back to Seasons 4 . . . the right to sue for enforcement of the '634 patent," the Court held that: **(a)** the assignment [Doc. 20-6] "clearly passed all rights and title associated with the '634 patent, 'any and all claims against third parties' associated with the patent, and 'the right to sue for infringement' of the patent" [Doc. 142 at 12]; **(b)** "[o]ther recitals confirm Seasons 4's then-present intent to part with all rights in the '634, including the right to sue in such patent" [*id*.];  and **(c)** "whatever licensing rights Foot-Candle transferred to Seasons 4, Foot-Candle retained at least (some) of the right it acquired to bring claims for infringement of the '634 patent against third parties who practice the patent without authorization" [*id*. at 16].

Based on its then-construction of the assignment, the Court held that

2

"because Foot-Candle (according to the Court's interpretation of the Assignment) retained some individual right to sue for infringement of the patents, it maintains an exclusionary right that satisfies Article III standing, no matter its express transfer of the exclusive right to sublicense." *Id*. at 18.

Thereafter, the Court noted: "Perhaps in discovery Special Happy will explore the meaning of 'Assigned Rights' and uncover evidence Foot-Candle divested itself of the right to sue for infringement and any exclusionary right." *Id*.

## III.   FACTS

Based on the Court's invitation to "uncover evidence Foot-Candle divested itself of the right to sue for infringement and any exclusionary right" [*id*.], SHL deposed FCL and S4I (collectively, "FCL+S4I") on 2026-Mar-06 under Fed. R. Civ. P. 30(b)(6). See, Transcript of Deposition of Jason Loomis as 30(b)(6) Corporate Representative of Defendant Foot-Candle, LLC and Defendant Seasons 4, Inc., pp. 1-126 (hereainfter, "Tr."), attached hereto as Exh. A.

As shown below, FCL+S4I testified under oath that: **(a)** the rights being transferred to S4I were exclusive to S4I (even to the exclusion of FCL); and **(b)** those exclusive rights included the rights to practice the invention, sue for infringement, recover damages for infringement, and the license others.

### A.   *Everyone That Understood What Was Transferred and What Was Licensed Back Was Present and Testified at the Deposition*

To make sure that FCL+S4I could testify about what precisely was transferred by the assignment and what precisely was exclusively licensed back, SHL asked Loomis (who represented FCL+S4I):

Q      This assignment [referring to Doc. 20-6 (marked as deposition

3

Exh. F)] was entered between Seasons 4, Inc. and Foot-Candle LLC, correct?

A    Yes.

Q    And you represent Seasons 4 today, correct?

A    And Foot-Candle, yes.

Q    And you also represent Foot-Candle today, correct?

A    Yes.

Q    And you were the signatory for Seasons 4 and Foot-Candle at the time of the assignment, correct?

A    Yes.

. . .

Q    Okay. And if anybody should know what was transferred and what was licensed back it should be the two parties to this assignment; is that right?

MR. ALCIATI:    Objection -- no objection.

A    In general terms, yes.

Tr. at p. 85, line 11 - p. 85, line 23 ("85:11-85:23"); Tr. at 86:4-86:9.

Based on the representation that FCL+S4I were the two parties that knew what was transferred and what was licensed back, FCL+S4I was asked about precisely what was transferred to FCL and what was licensed back to S4I.

## B.    FCL and S4I Testified That the Rights Transferred to S4I Were Exclusive Rights (Even to the Exclusion of FCL)

FCL+S4I's testimony established that, to the extent that any rights were being transferred to S4I, those rights were exclusive to S4I (even to the exclusion of FCL). Specifically, FCL+S4I testified that "Foot-Candle understood exclusive rights were being transferred -- exclusive rights were being transferred to S4, yes." Tr. at 76:20-76:22 (emphasis supplied). Reinforcing the exclusivity, FCL+S4I continued that "Foot-Candle understood that it was giving S4 an exclusive license." Tr. at 76:25-77:1 (emphasis supplied). For clarity, FCL+S4I was asked:

Q    And it was an exclusive license to, quote, the assigned rights. Do you see that?

A    Yes.

4

Tr. at 77:2-77:4 (emphasis supplied).

To confirm that the exclusivity also precluded FCL from exercising any of the exclusively licensed rights, FCL+S4I was asked:

> Q    But as it currently stands --
> A    Currently S4 has an exclusive license.
> Q    And exclusive even to Foot-Candle, correct?
> A    Yeah. Seasons 4 has the exclusive right.

Tr. at 126:9-126:13.

To determine what exclusive rights were transferred (even to the exclusion of FCL), FCL+S4I was asked about what precisely the assigned rights included.

### C.    *FCL and S4I Testified That Transferred Exclusive Rights Included the Right to Sue for Infringement and the Right to Recover Infringement Damages*

FCL+S4I testified that the assigned rights must mean the rights that were assigned (not just any arbitrary right), stating under oath as follows:

> Q    And so we're trying to get to the bottom of what exactly is included in these assigned rights. Do you understand that?
> A    Yes.
> Q    Okay. And you would agree with me that assigned rights means something that was assigned, correct?
> A    Yes.

Tr. at 94:10-94:17.

Thus, to the extent that S4I was granted any type of exclusivity to any rights, S4I's exclusivity had to be for something that was assigned through the Assignment (Doc. 20-6, marked as deposition Exh. F).

FCL+S4I then testified about what those exclusive "Assigned Rights" included.

### 1.    <u>The Assigned Rights Included the Exclusive Right of S4I (Not FCL) to Sue for Infringement</u>

Contrary to Defendants' prior representation to this Court that FCL had not

conveyed back to S4I the right to sue for infringement [see, Doc. 142 at 10], the sworn testimony of FCL+S4I clearly demonstrated that the Assigned Rights included the right to sue for infringement. Specifically, FCL+S4I testified:

> Q       Just to be clear, do the assigned rights include the right to sue for infringement?
> MR. ALCIATI:      Objection, asked and answered and vague
> A       Seasons 4 is involved in this litigation -- I think I answered it actually. If it -- it would make sense that -- that was -- that is a right of Seasons 4 to -- to sue. But I did like carve out another way it could be -- you could go about it where if the right retained at Foot-Candle could, you know, assign that right at a different time. But I don't think that's the case. I think S4 rights does have the right to sue.

Tr. at 120:12-120:24 (emphasis supplied).

FCL+S4I confirmed (two (2) more times) that S4I had the exclusive right to sue for infringement:

> Q       And after the assignment Seasons 4 could sue others for infringement, correct?
> MR. ALCIATI:      Objection, vague, calls for a legal conclusion.
> A       As I mentioned before, I've answered this question before. I believe that Seasons 4 has the right and the ability to sue.

Tr. at 124:1-124:7 (emphasis supplied).

> Q       But after the exclusive license Seasons 4 can still exclude others from practicing the patent?
> A       Sure. But that could change. That could always change. The exclusive license could change and -- if we determined that we wanted it too.
> Q       But currently as it stands --
> A       Currently S4 has an exclusive license.
> Q       And exclusive even to Foot-Candle, correct?
> A       Yea. Seasons 4 has the exclusive right.

Tr. at 126:4-126:13 (emphasis supplied).

Although FCL+S4I conjectured about a hypothetical injury that could occur if FCL assigned the right-to-sue at a different time or the situation changed, as it

6

currently stood S4I had the exclusive right to sue for infringement and exclude others (including FCL) from practicing the '634 patent. See, also, Joint Statement, Doc. 234 at 3 (Defendants' portion admitting that "Loomis also testified that S4I had the right to sue and recover damages").

### 2. The Assigned Rights Included the Exclusive Right of S4I (Not FCL) to Recover Damages for Infringement

Reinforcing the testimony that FCL+S4I had the exclusive right to sue for infringement, FCL+S4I further testified that the assigned rights included the right to recover damages for infringement, stating as follows:

> Q      Do the assigned rights include the right to recover damages for infringement?
> MR. ALCIATI:      Objection, asked and answered, legal conclusion and vague.
> A      I would think so, yes, but I cannot answer a hundred percent.
> BY MR. HAN:
> Q      So it's not a yes, not a no, not an I don't know, you're not comfortable answering or is it --
> A      It's exactly what I just said it was. So I never agreed to fully do it the way you wanted to do it. <u>I believe that S4 is entitled to damages, so they have that right</u>.

Tr. at 121:2-121:15 (emphasis supplied).

Defendants also admitted that "S4I had the right to sue and recover damages. Joint Statement, Doc. 234 at 3.

### 3. The Assigned Rights Included the Exclusive Right of S4I (Not FCL) to Practice the Invention

FCL+S4I further testified that "S4 was granted the rights to practice the patents, distribute the products, import the product, sell the product." Tr. at 86:19-86:22. Thus, the Assigned Rights granted to S4I the <u>exclusive</u> right to make, use, sell, offer to sell, import, or otherwise practice the patents. See, also, Joint

Statement, Doc. 234 at 3 ("Throughout an hour or so of repetitive questions, Loomis consistently explained that 'Assigned Rights' are the rights to practice the '634 patent").

### 4. The Assigned Rights Included the Exclusive Right of S4I (Not FCL) to Grant Licenses to Others

FCL+S4I further testified that: **(a)** "Seasons 4 was granted <u>or assigned</u> an exclusive license to the assigned rights as well as the right to grant nonexclusive sublicenses" [Tr. at 86:16-86:18 (emphasis supplied)]; and **(b)** "S4 has an exclusive license to the assigned rights with all the customary rights related thereto including specifically the right to grant nonexclusive sublicenses" [Tr. at 107:13-107:17]. See, also, Tr. at 123:14-123:16 ("**Q**: After the assignment Seasons 4 can license its patents to anyone it wishes, correct? **A**: Yes).

Thus, the Assigned Rights included the exclusive right for S4I to grant licenses (or more accurately to grant sublicenses) to others.

### 5. S4I Retained Exactly the Same Rights After the Assignment That S4I Had Before the Assignment

The sworn testimony of FCL+S4I clearly demonstrated that <u>none</u> of S4I's substantive rights had changed from <u>before</u> the assignment to <u>after</u> the assignment (meaning, S4I possessed the same exclusionary rights <u>after</u> the assignment as what S4I had possessed <u>before</u> the assignment). FCL+S4I testified as follows:

> Q    Let's see if we can attack this from a different angle. Before the assignment Seasons 4 could practice its inventions, correct?
> A    Yes.
> Q    After the assignment Seasons 4 could practice the inventions, correct?
> A    Yes.
> Q    Before the assignment Seasons 4 could license the patents to

anyone it wished, correct?

A    Yes.

Q    After the assignment Seasons 4 can license its patents to anyone it wishes, correct?

A    Yes.

Q    Before the assignment Seasons 4 could sue anyone for infringement, correct?

A    As I stated before I believe that is -- is accurate.

Q    And after the assignment Seasons 4 can sue other --

A    Well, that is -- go back and ask the question. I apologize. Before the assignment, yes, Seasons 4 could sue.

Q    And <u>after the assignment Seasons 4 could sue others for infringement</u>, correct?

MR. ALCIATI:    Objection, vague, calls for a legal conclusion.

A    As I mentioned before, I've answered this question before. I believe that <u>Seasons 4 has the right and the ability to sue</u>. Does Seasons 4 after the assignment have the right to sell the patent portfolio?

BY MR. HAN:

Q    I'm sorry, is that a statement?

A    No, it was a question.

MR. ALCIATI:    Let Mr. Han do his questioning.

THE WITNESS:    Sorry.

BY MR. HAN:

Q    And before the assignment Seasons 4 could recover damages for infringement, correct?

A    Yes.

Q    And <u>after the assignment Seasons 4 could recover damages for infringement</u>, correct?

MR. ALCIAT:    Objection, asked and answered and legal conclusion.

A    As I mentioned before, <u>I believe that is a right of Seasons 4's</u>, but definitely I'm not prepared to answer yes, but <u>I believe that is</u>.

Tr. at 123:4-125:1 (emphasis supplied).

### 6.    <u>S4I (Not FCL) Has Always Held All Exclusionary Rights and All Substantial Rights</u>

In summary, after the Assigned Rights were exclusively licensed back to

S4I, only S4I (even to the exclusion of FCL) held the <u>exclusive</u> rights to: **(a)** sue

for infringement; **(b)** recover damages for infringement; **(c)** practice the patents;

9

and **(d)** license the patents to others. See, §§ III.C.1-III.C.4, *supra*. FCL held only bare title or naked title, thereby retaining <u>only</u> the ability to sell the patent portfolio. See, Tr. at 86:23-86:24 and 125:22-125:25.

## IV.    CONTROLLING LEGAL AUTHORITY

### A.    *Patentee Bears the Burden to Demonstrate Injury-in-Fact*

"Standing is a threshold issue that is subject to de novo review." *United States v. Weiss*, 467 F.3d 1300, 1307 (11th Cir. 2006). If a claimant lacks Article III standing, federal courts do not have jurisdiction to consider the claim. *Id.* at 1308. Standing consists of three elements: **(1)** the party claiming standing must have suffered an "injury in fact," an invasion of a legally protected interest that is both **(a)** concrete and particularized, and **(b)** actual or imminent, not conjectural or hypothetical; **(2)** there must be some causal connection between the injury and the complained-of conduct; and **(3)** it must be likely, not just speculative, the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). The party invoking federal jurisdiction bears the burden of establishing all three elements. *Id.* at 561. At the heart of Article III standing is the existence of an <u>injury</u>, not <u>ownership</u>. *Via Mat Intern. South America Ltd. v. U.S.*, 446 F.3d 1258, 1262 (11th Cir. 2006) (emphasis supplied).

### B.    *The Party That Has Been Granted All Substantial Rights Under the Patent Is Considered the Owner Regardless of How the Parties Characterize the Transaction*

"When the patentee transfers rights, the 'party that has been granted <u>all substantial rights</u> under the patent is considered the owner regardless of how the parties characterize the transaction that conveyed those rights.'" *Azure Networks,*

*LLC v. CSR PLC*, 771 F.3d 1336, 1342 (Fed. Cir. 2014) (emphasis supplied), citing *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000). "In that event, the transferee is treated as the patentee and has standing to sue in its own name." *Azure*, 771 F.3d at 1342, citing *Propat Int'l. Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007). "[W]hichever party has all, or substantially all, rights in the patent 'alone has standing to sue for infringement.'" *Azure*, 771 F.3d at 1342, citing *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007) and *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1358-1359 (Fed. Cir. 2010) ("A patent owner may transfer all substantial rights in the patents-in-suit, in which case the transfer is tantamount to an assignment of those patents to the exclusive licensee, <u>conferring standing to sue solely on the licensee</u>" (emphasis supplied)). "Therefore, when all rights or all substantial rights have been transferred, the transferee - and not the transferor - is the effective owner for purposes of standing." *Asure*, 711 F.3d at 1342, citing *Speedplay*, 211 F.3d at 1250.

"A patent owner that alienates an exclusionary right to another may lack Article III standing to sue for violation of that right." *Deere & Co. v. Kinze Mfg., Inc.*, 683 F. Supp. 3d 904, 914 (S.D. Iowa 2023), quoting *Uniloc 2017 L.L.C. v. Google L.L.C.*, 508 F. Supp. 3d 556, 568 (N.D. Cal., 2020) rev'd on other grounds, 52 F.4th 1352 (Fed. Cir. 2022); accord *Uniloc USA, Inc. v. Apple, Inc.*, No. C 18-00358, 2020 WL 7122617, at *7 (N.D. Cal. Dec. 4, 2020) ("This bears restating, given the [plaintiffs'] continual self-characterization as the 'patent owner,' as though Article III standing appears at the utterance of a magic phrase"); *Uniloc USA, Inc. v. Motorola Mobility, L.L.C.*, C.A. No. 17-1658, 2020 WL 7771219, at

11

\*5 (D. Del. Dec. 30, 2020) ("constitutional standing . . . does not depend on labels; it is the substance of the allegations that matters. Thus, a plaintiff's standing does not turn on whether it is designated a patentee, patent owner, patent holder, or exclusive licensee. And the substance that matters is whether the plaintiff has exclusionary rights" (emphasis supplied)).

### C.    The Most Important Exclusionary Rights and Substantial Rights Are the Right to Practice the Patent and the Right to Sue for Infringement

Whether the licensor transferred the exclusive right to make, use and sell products or services is vitally important to an assignment. *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010). The nature and scope of the purported right to bring suit is the most important consideration. *Id.* at 1361 (emphasis supplied).

### D.    S4I's Ability to Sublicense Makes Any Hypothetical Exclusionary Right of FCL Illusory

A licensor lacks standing if the licensor's right to sue is rendered illusory by the licensee's ability to settle licensor-initiated litigation by granting royalty-free sublicenses to the accused infringers. *Alfred E. Mann Found. v. Cochlear Corp.*, 604 F.3d 1354, 1361 (Fed. Cir. 2010), citing *Speedplay*, 211 F.3d at 1251; see, also, *KEG Techs., Inc. v. Laimer*, No. 1:08-CV-0393-JEC, 2010 WL 11508828, at \*4 (N.D. Ga. Dec. 14, 2010) (the right to sue becomes illusory where another party can grant a royalty-free sublicense to any alleged infringer).

## V.    ARGUMENT

Here, FCL bears the burden of establishing standing under Article III. *Lujan*, 504 U.S. at 561.

12

Looking beyond labels to the substance of the alleged transaction [*Uniloc*, 2020 WL 7771219 at *5], it is clear that FCL suffered no injury-in-fact. Specifically, FCL+S4I testified under oath that the most important exclusionary rights (i.e., right to sue for infringement and right to recover damages for infringement), along with the most important substantial rights (i.e., right to practice the patent), are held exclusively by S4I. See, § III.C, *supra*. In other words, S4I exclusively possesses all exclusionary rights and all substantial rights in the '634 patent, thereby depriving FCL of Article III standing.

Here, the exclusive rights vested to S4I (even to the exclusion of FCL) are: **(a)** the exclusive right to practice the patents [Tr. at 86:19-86:22]; **(b)** the exclusive right to license others [Tr. at 86:16-86:18; Tr. at 107:13-107:17; Tr. at 123:14-123:16]; **(c)** the exclusive right to sue for infringement [Tr. at 120:12-120:24; Tr. at 124:1-124:7; Tr. at 126:4-126:13]; and **(d)** the exclusive right to recover damages for infringement [Tr. at 121:2-121:15]. There are no geographical limitations to S4I's exclusivity; no time limitations to S4I's exclusivity; no field-of-use limitations to S4I's exclusivity; and no reservation by FCL of any of the licensed-away rights. See, Doc. 20-6, *passim*. Ultimately, there are no limitations at all on S4I's exclusivity; and, FCL retained zero exclusionary rights.

Contrary to Defendants' prior representations that FCL retained the right to sue for infringement [Doc. 142 at 9-10], the sworn testimony of FCL+S4I clearly proves that FCL never held any exclusionary rights at all. See, § III.C, *supra*. Rather, FCL held (and still holds) nothing more than bare title (or naked title) to the patents, which is insufficient to show a concrete or imminent injury under

13

Article III. *Lujan*, 504 U.S. at 560-561. Any conjecture by FCL+S4I of any hypothetical future transfer (e.g., if FCL assigns the right so that another could sue at a later date [Tr. at 120:12-120:24; Tr. at 124:1-124:7; Tr. at 126:4-126:13]) is insufficient to meet the "concrete" or "actual" injury requirement under Article III.

Lastly, any right to sue by any entity other than S4I is rendered illusory by S4I's right to grant sublicenses to any accused infringer. See, *Mann*, 604 F.3d at 1361. In other words, every exclusionary right and every substantial right belongs exclusively to S4I (to the exclusion of FCL), thereby depriving FCL of standing under Article III.

As this Court previously recognized, under *Intellectual Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807 (Fed. Cir. 2024), the sole relevant inquiry for standing under Article III is whether FCL had *an* exclusionary right when this matter was removed from the Superior Court of DeKalb County. Because FCL retained zero exclusionary rights by granting to S4 all of the exclusionary rights, FCL lacked the "irreducible constitutional minimum of an injury in fact." *Zebra*, 101 F.4th at 814.

Consequently, this Court must: **(a)** disregard Defendants' prior misrepresentation about FCL retaining any right to sue for infringement; **(b)** review the facts of the underlying transaction based on the sworn testimony of FCL+S4I; **(c) DISMISS** the federal claims for lack of standing under Article III; and **(d) REMAND** any remaining state-law claims to the Superior Court of DeKalb County.

## VI.    CONCLUSION

Because S4I has always exclusively retained all substantial rights and all

exclusionary rights in the '634 patent, FCL never suffered any injury-in-fact. In other words, FCL never had Article III standing to remove this action to federal court. Consequently, this Court must **DISMISS** Defendants' federal patent claims and **REMAND** all state-law claims to the Superior Court of DeKalb County.

[SIGNATURE TO FOLLOW]

Respectfully submitted, 2026-Mar-17.

/s/ Sam S. Han
Sam S. Han
Georgia Bar No. 322284
Counsel for Plaintiff and Counter-Defendant
DeWoskin Law Firm, LLC
535 N. McDonough Street
Decatur, Georgia 30030
(404) 987-0026
sam@atlantatrial.com

15

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **SPECIAL HAPPY, LTD.,**<br>    Plaintiff and Counter-Defendant,<br>             v.<br>**JASON LOOMIS**, et al.,<br>    Defendants and Counter-Plaintiffs. | Civil Action Number<br>1:24-cv-03049-MLB<br>**CERTIFICATE OF**<br>**COMPLIANCE PURSUANT TO**<br>**LR 7.1D** |

**CERTIFICATE OF COMPLIANCE PURSUANT TO LR 7.1D**

The undersigned counsel hereby certifies that **PLAINTIFF'S RENEWED**

**MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(h)(3) AND**

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION** has been

prepared using one of the font and point selections approved in LR 5.1 NDGa.

Respectfully submitted, 2026-Mar-17.

/s/ Sam S. Han
Sam S. Han
Georgia Bar No. 322284
Counsel for Plaintiff and Counter-Defendant
DeWoskin Law Firm, LLC
535 N. McDonough Street
Decatur, Georgia 30030
(404) 987-0026
sam@atlantatrial.com

16

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **SPECIAL HAPPY, LTD.,**<br>      Plaintiff and Counter-Defendant,<br>                        v.<br>**JASON LOOMIS**, et al.,<br>      Defendants and Counter-Plaintiffs. | Civil Action Number<br>1:24-cv-03049-MLB<br><br>**CERTIFICATE OF FILING AND**<br>**SERVICE** |

## CERTIFICATE OF FILING AND SERVICE

Undersigned counsel certifies that **PLAINTIFF'S RENEWED MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(h)(3) AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION** was filed using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter.

Respectfully submitted, 2026-Mar-17.

/s/ Sam S. Han
Sam S. Han
Georgia Bar No. 322284
Counsel for Plaintiff and Counter-Defendant
DeWoskin Law Firm, LLC
535 N. McDonough Street
Decatur, Georgia 30030
(404) 987-0026
sam@atlantatrial.com

17